# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS PULIDO,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>JAMES D. HARTLEY,<br><br>　　　　　Respondent.　　　／ | 1:12-cv-00666-DLB (HC)<br><br>ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO TERMINATE ACTION, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>[Doc. 1] |

　　　　Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), Petitioner has consented to the jurisdiction of the United States magistrate judge.  Local Rule 305(b).

　　　　On April 26, 2012, Petitioner filed the instant petition for writ of habeas corpus.  He challenges, among other things, the California Board of Parole Hearings' application of parole guidelines as modified by California Proposition 9 ("Marsy's Law") at his March 25, 2010, parole hearing.

DISCUSSION

I.　　Preliminary Review of Petition

　　　　Rule 4 of the Rules Governing Section 2254 Cases provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

The Advisory Committee Notes to Rule 8 indicate that the court may dismiss a petition for writ

of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. See Herbst v. Cook, 260 F.3d 1039 (9th Cir. 2001). A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971). The Court will review the instant petition pursuant to its authority under Rule 4.

II.     Failure to State a Cognizable Ground for Relief

On January 24, 2011, the Supreme Court issued its opinion in Swarthout v. Cooke, ___ U.S.___, 131 S.Ct. 859, 2011 WL 197627 (2011), and held that "the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business." Id., 131 S.Ct. at 863. The Supreme Court stated that a federal habeas court's inquiry into whether a prisoner denied parole received due process is limited to determining whether the prisoner "was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." Id., at 862, *citing*, Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 16 (1979). Review of the instant case reveals Petitioner was present at his parole hearing, was given an opportunity to be heard-which he forfeited when he chose not to adhere to the commissioner's warnings that he stop being disruptive, and was provided a statement of reasons for the parole board's decision.[1,2] (See Petition Ex. A.) According to the Supreme Court, this is "the beginning and the end of the federal habeas courts' inquiry into whether [the prisoner] received due

---

[1] The Board denied parole based on several findings, including his past and present mental attitude toward the crime; his behavior at the parole suitability hearing in that he was argumentative, refused to cooperate and refused to be sworn in; his refusal to participate in the most recent psychological examination; his prison record, which contained a rules violation in 2007 for possession of tobacco; and lack of significant participation in self-help programming. (See Petition Ex. A.)

[2] Petitioner also claims that the Board denied his right to self-representation at the March 2010 hearing. Petitioner's claim is completely belied by the transcript of the hearing. It was noted that Petitioner signed a waiver of representation by an attorney. The Deputy Commissioner recognized Petitioner's desire to represent himself at several different times, but advised Petitioner that in order to ensure his rights were not violated, particularly given his 1.1 grade reading level, counsel would be present if needed. (See Petition Ex. A.) The Commissioner continued to recognize Petitioner's self-representation by asking him questions directly, instead of asking stand-by counsel. It was not until Petitioner's self-imposed removal from the hearing that stand-by counsel stepped in to ensure that Petitioner's constitutional rights were not violated during his absence. (Id.) Thus, Petitioner's claim is unfounded.

process." Swarthout, 131 S.Ct. at 862. "The Constitution does not require more [process]." Greenholtz, 442 U.S. at 16. Therefore, to the extent Petitioner attempts to challenge the decision of the parole board, his claims are not cognizable.

Petitioner also claims Marsy's Law was applied to him retroactively in violation of his due process rights. At the March 25, 2010 hearing, his next parole consideration hearing was postponed for seven years. As explained in detail below, Marsy's law increased the minimum parole hearing deferral period from one year to three years, the maximum deferral period from five years to fifteen years, and the default deferral period from one year to fifteen years. Cal. Penal Code § 3041.5; Gilman v. Schwarzenegger, 638 F.3d 1101, 1104 (9th Cir. 2011).

The Ex Post Facto Clause of the United States Constitution prohibits the states from passing any "ex post facto law," a prohibition that "is aimed at laws 'that retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Cal. Dept. of Corrections v. Morales, 514 U.S. 499, 504 (1995); see also Weaver v. Graham, 450 U.S. 24, 28 (1981) (providing that "[t]he ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'"). The United States Supreme Court has held that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 250 (2000).

On November 4, 2008, California voters passed Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which, *inter alia*, altered the frequency of parole hearings for prisoners not found suitable for parole. Cal. Penal Code § 3041.5; Cal. Const., art. I, § 28. Prior to the passage of Proposition 9, in the event a prisoner was determined unsuitable for parole, a subsequent parole hearing would be held annually thereafter. Cal Penal Code § 3041.5(b)(2) (2008). If the parole board determined it was not reasonable to expect parole would be granted within the next year, it could defer rehearing for two years. Id. If the prisoner was convicted of murder and it was not reasonable to expect he/she would be granted parole within the year, the board could select a rehearing term of up to five years. Id. Proposition 9 changed the frequency of subsequent parole hearings as follows:

>    The board shall schedule the next hearing, after considering the views and interests of the victim, as follows:
>
>    (A) Fifteen years after any hearing at which parole is denied, unless the board finds by clear enumerated in subdivision (a) of Section 3041 are such that consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than 10 additional years.
>
>    (B) Ten years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence that . . . consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than seven additional years.
>
>    (C) Three years, five years, or seven years after any hearing at which parole is denied, because . . . consideration of the public and victim's safety requires a more lengthy period of incarceration for the prisoner, but does not require a more lengthy period of incarceration for the prisoner and convincing evidence that the criteria relevant to the setting of parole release dates than seven additional years.

Cal. Penal Code § 3041.5(b)(3) (November 4, 2008).

Petitioner claims an ex post facto violation occurred when Marsy's Law was applied to him retroactively because he was denied future parole consideration for a period of seven years. The Court does not find an ex post facto violation.

In Morales, a California statute changed the frequency of reconsideration hearings for parole from every year to up to three years for prisoners convicted of more than one murder. 514 U.S. at 503. The Supreme Court determined the statute did not violate ex post facto because the retroactive application of the change in California law did not create "'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Garner v. Jones, 529 U.S. 244, 250 (2000), *quoting*, Morales, 514 U.S. at 509. The Supreme Court noted that the law "did not modify the statutory punishment for any particular offenses," it did not "alter the standards for determining either the initial date of parole eligibility or an inmate's suitability for parole," and it "did not change the basic structure of California's parole law." Garner, 529 U.S. at 250, *citing*, Morales, 514 U.S. at 507. Likewise, in this case Proposition 9 did not modify the punishment for Petitioner's offense of attempted murder, it did not alter his initial parole eligibility date, and it did not change the basic structure of California's parole law. The board must consider the same factors in determining parole suitability as before. See Cal. Penal Code 3041(b); Cal. Code Regs., tit. 15, § 2402(b).

4

Nevertheless as noted above, in <u>Garner</u> the Supreme Court found that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." 529 U.S. at 250.  In <u>Garner</u>, the Supreme Court determined that an amendment to Georgia's parole law did not violate ex post facto even where the frequency of reconsideration hearings was changed from every three years to every eight years. <u>Id</u>. at 256.  The Court held that it could not conclude that the change in Georgia law lengthened the prisoner's time of actual imprisonment because Georgia law vested broad discretion with the parole board to set a prisoner's date of rehearing.  <u>Id</u>. at 254-56.  In addition, the Court found it significant that the parole board's own policies permitted "expedited parole reviews in the event of a change in [a prisoner's] circumstance or where the Board receives new information that would warrant a sooner review." <u>Id</u>. at 254 [Citation.].

Here, the California parole board is still vested with broad discretion in selecting a date of rehearing from three years to 15 years.  While it is true that Petitioner is no longer eligible for parole review as previously determined under California law, the Board retains the discretion, as did the Georgia parole board in <u>Garner</u>, to advance a hearing at any time should there be a change in circumstances. Pursuant to Cal. Penal Code § 3041.5(b)(4), the Board

> may in its discretion, after considering the views and interests of the victim, advance a hearing set pursuant to paragraph (3) to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner provided in paragraph (3).

Based on the Supreme Court's holding in <u>Garner</u>, this Court does not find, and Petitioner has not demonstrated, that Proposition 9 creates more than just a "speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." <u>Garner</u>, 529 U.S. at 251, *quoting*, <u>Morales</u>, 514 U.S. at 509.

For the above reasons, Petitioner's challenges to the Board's application of Marsy's Law in his case must fail.

III.     <u>Certificate of Appealability</u>

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.

5

Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

ORDER

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is SUMMARILY DISMISSED with prejudice;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **May 10, 2012**                        /s/ **Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE